FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 17, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY L. M.,<br><br>                      Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO: 4:18-CV-5061-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 11 and 12. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Nicholas D. Jordan. The defendant is represented by Special Assistant United States Attorney Franco L. Becia. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 12, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 11.

## JURISDICTION

Plaintiff Kelly M.[1] filed for supplemental security income and disability insurance benefits on January 27, 2012, alleging an onset date of June 1, 2011. Tr. 289-90, 292-98. Benefits were denied initially, Tr. 136-43, and upon reconsideration, Tr. 146-56. A hearing before an administrative law judge ("ALJ") was conducted on May 15, 2014. Tr. 32-48. Plaintiff was represented by counsel but did not appear at the hearing. *Id.* The ALJ denied benefits in a decision dated June 23, 2014. Tr. 111-29. On April 26, 2016, the Appeals Council remanded the case after new evidence was submitted by Plaintiff indicating "a new impairment of breast cancer." Tr. 130-35. On November 21, 2016, an additional hearing was held before a different ALJ. Tr. 49-74. Plaintiff was represented by counsel but did not appear at the hearing, and a medical expert testified at the hearing. *Id.* The ALJ denied benefits, Tr. 12-30, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

/ / /

/ / /

/ / /

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 43 years old on the date of her alleged onset of disability. Tr. 77. She completed high school. Tr. 334. At the time of the hearing, she lived by herself. Tr. 47. Plaintiff has work history as an office manager, banquet server, and nursery school attendant. Tr. 41-42, 92, 99-100. In a June 2014 letter, Plaintiff reported that she is unable to work because of neuropathy in her feet "up to [her] middle torso" and muscular vascular disease, which causes numbness, pain, tingling, and a feeling she is "unable to move." Tr. 365. Plaintiff also reported that walking even short distances requires her to take breaks and results in swelling in her ankles and legs; she is unable to run or jog; she cannot go down to her knees from a standing position or stand back up without help; she experiences "pain and discomfort in all of [her] muscles and joints each and [sic] everyday"; she is not able to sleep more than two to three hours straight; and she has swelling in her hands and problems gripping things. Tr. 343, 347, 365-66.

The record also indicates that Plaintiff's medical history includes "cirrhosis secondary to chronic alcoholism"; she has been hospitalized for alcoholic pancreatitis; and at one point she was treated for acute renal failure due to dehydration. Tr.383-84, 404, 426-48. In 2015, Plaintiff underwent treatment for

breast cancer, which included a mastectomy, chemotherapy, and radiation therapy. *See* Tr. 20-21, 1198, 1418, 1815-20, 1826.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2011, the alleged onset date. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: peripheral neuropathy, right carpal tunnel syndrome, bilateral thumb arthritis, deep vein thrombosis, migraine headaches, alcohol abuse, and breast cancer. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the individual can never climb ladders, ropes, or scaffolds, work at unprotected heights or in proximity to hazards such as heavy machinery. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can frequently handle and finger. The claimant can perform work in which concentrated exposure to extreme cold, heat, and/or respiratory irritants is not present.

Tr. 19. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an office manager. Tr. 22. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

Plaintiff can perform, including: general clerk, data examination clerk, and clerical sorter. Tr. 22-23. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of this decision. Tr. 23.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly considered Plaintiff's symptom claims; and

3. Whether the ALJ erred at step five.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is

uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Plaintiff argues that the prior ALJ decision, remanded by the Appeals Council, "incorrectly weighed the various medical opinion evidence," and because the "current decision on appeal adopts the weight analyses from the prior ALJ decision[,] . . . Plaintiff contests those weight analyses with a specific emphasis on Dr. [C]abasug."[2] ECF No. 11 at 9. As an initial matter, as noted by Defendant, Plaintiff's general contention that the ALJ "improperly evaluated the evidence as a whole" was not argued with specificity in the opening brief; thus, the Court declines to address medical opinion evidence from the prior ALJ decision, aside

---

[2] The Court notes that the Appeals Council did not identify any error in the prior ALJ's consideration of the medical opinion evidence. *See* Tr. 132-33. Accordingly, as indicated herein, the current ALJ found the opinions in the record at the time of the prior decision "were addressed and adequate[ly] discussed in the prior ALJ decision." Tr. 22. However, the parties consider the prior ALJ's findings regarding Dr. Cabasug's opinion; thus, the Court will do the same.

from Dr. Cabasug's opinions. ECF No. 12 at 17 (citing *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)).

In February 2014, treating physician Dr. Michael Cabasug noted that Plaintiff had moderate limitations in her ability to stand and walk due to peripheral neuropathy; and moderate limitations in her ability to carry, handle, push, pull, and reach due to bilateral carpal tunnel syndrome. Tr. 719-20. Dr. Cabasug opined that Plaintiff's ability to perform work in a regular predictable manner despite her impairment was "severely limited," which was further defined as "unable to meet the demands of sedentary work." Tr. 721. In April 2014, Dr. Cabasug completed a "medical questionnaire," which was entirely comprised of a single checked box indicating Dr. Cabasug "[does] not believe that [Plaintiff] is capable of performing any type of work on a reasonably continuous, sustained basis (e.g., eight hours a day, five days a week, or approximately 40 hours per week, consistent with a normal work routine)." Tr. 717 (emphasis in original). The prior ALJ gave Dr. Cabasug's opinions little weight for several reasons, and upon remand by the Appeals Council, the subsequent ALJ found Dr. Cabasug's opinions "were addressed and adequate[ly] discussed in the prior ALJ decision." Tr. 22, 122.

First, the prior ALJ gave Dr. Cabasug's opinion little weight because

his conclusion is inconsistent with his examinations of [Plaintiff]. Although testing shows [Plaintiff] has peripheral neuropathy and carpal tunnel syndrome, physical examinations show these impairments are not as limiting as [Plaintiff] alleges. She regularly maintains full strength, sensation, range of motion and deep tendon reflexes despite the alleged severity of her impairments. Dr. Cabasug's conclusion is

1
2
> inconsistent with his own findings during a physical examination showing [Plaintiff's] impairments provide only moderate limitations in [Plaintiff's] ability to perform work-related activities.

3   Tr. 122.  The ALJ may properly reject a medical opinion if it is inconsistent with

4   the provider's own treatment notes.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

5   (9th Cir. 2008); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

6   2004) (ALJ may discount an opinion that is conclusory, brief, and unsupported by

7   the record as a whole, or by objective medical findings).  Plaintiff generally argues

8   the ALJ "failed to adequately consider" Dr. Cabasug's opinion because he was

9   "familiar with her condition" as Plaintiff's treating provider, and his "chart notes

10  have been consistent in the information they provide, as well as the conclusion that

11  that due to her medical conditions and the resulting physical limitations, [Plaintiff]

12  is incapable of returning to gainful, sustainable full-time employment."  ECF No.

13  13 at 4-5.  "However, the ALJ need not accept the opinion of any physician,

14  including a treating physician, if that opinion is brief, conclusory and inadequately

15  supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d

16  1219, 1228 (9th Cir. 2009) (quotation and citation omitted).  Moreover, the ALJ

17  explicitly cited ongoing physical examination findings by Dr. Cabasug that were

18  inconsistent with the severity of his conclusion, including: normal gait and station;

19  no abnormal strength or tone in the head, neck, spine, ribs, pelvis or extremities; no

20  decreased range of motion; normal deep tendon reflexes in upper and lower

21  extremities; normal coordination; and some decreased sensation in her toes at one

examination, but generally normal sensation with peripheral pulses intact.  Tr. 120-22, 655, 658, 710, 723.

Thus, regardless of evidence that could be considered more favorable for the Plaintiff, the ALJ reasonably concluded that the severity of Dr. Cabasug's opinion was inconsistent with his own clinical findings.  Tr. 122; *Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").  This was a specific and legitimate reason to give Dr. Cabasug's opinion little weight.

In addition, the ALJ found that Dr. Cabasug's opinion is "vague and fails to identify specific limitations that would prevent [Plaintiff] from performing work."  Tr. 122.  The Court may decline to address this issue because Plaintiff did not challenge the reason with specificity in her opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.  Moreover, if a physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions".  *See, e.g., Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  For all of these reasons, the Court finds no error in the consideration of Dr. Cabasug's opinion.

As a final matter, Plaintiff generally argues that the ALJ "failed to consider" medical records pertaining to Plaintiff's treatment for breast cancer, and how that

evidence might have impacted her RFC prior to her diagnosis in 2015.[3] ECF No. 11 at 10-11. However, despite Plaintiff's claims to the contrary, the ALJ outlined Plaintiff's breast cancer treatment, including a mastectomy and subsequent chemotherapy and radiation. ECF No. 11 at 11; Tr. 20. The ALJ additionally found that this medical evidence was consistent with medical expert testimony from Dr. William Cirksena, who noted that subsequent to her chemotherapy, Plaintiff suffered a clot in a vein leading to her chemotherapy port, "which was treated successfully." Tr. 20, 58. Moreover, as noted by Defendant, Plaintiff "never explains why each piece of evidence identified is significant, probative, and resulted in harmful error." ECF No. 12 at 17. In other words, Plaintiff failed to identify any evidence of specific limitations due to Plaintiff's breast cancer treatment, at any point in the relevant adjudicatory period, that were not properly accounted for in the assessed RFC. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination");

---

[3] Plaintiff contends that although Plaintiff "was diagnosed with breast cancer in July 2015, the cancer was likely present in some form for more than two years." ECF No. 11 at 10. However, Plaintiff fails to support this claim with citation to the medical record; nor does she offer evidence of actual functional limitations during this period due to the "presence" of breast cancer before it was diagnosed in July 2015.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

*see also Turner*, 613 F.3d at 1223.  Thus, the Court finds no error in the ALJ's consideration of the medical evidence pertaining to Plaintiff's treatment for breast cancer, and concludes that the RFC is supported by substantial evidence from the entire adjudicatory period.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (RFC determination will be affirmed if supported by substantial evidence).

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence in the record" for several reasons. Tr. 20.

### 1. Lack of Objective Medical Evidence

First, the ALJ reviewed the medical evidence submitted since the prior ALJ decision, which Plaintiff's counsel confirmed at the hearing, consisted entirely of Plaintiff's treatment for breast cancer, and found that "post treatment for breast cancer," the evidence was consistent with the assessed RFC at the sedentary level with additional exertional restrictions. Tr. 20-21. The ALJ also found the objective evidence regarding Plaintiff's claimed impairments of peripheral neuropathy, carpal tunnel syndrome, bilateral thumb arthritis, and migraines "was adequately discussed in the prior decision and without evidence of changed

circumstances additional discussion is moot." Tr. 21 (citing Tr. 111-29). An ALJ

may not discredit a claimant's pain testimony and deny benefits solely because the

degree of pain alleged is not supported by objective medical evidence. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

However, the medical evidence is a relevant factor in determining the severity of a

claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §

404.1529(c)(2).

Here, the ALJ set out, in detail, the medical evidence contradicting

Plaintiff's claims of disabling limitations. Tr. 26-28. For example, the "new

additional evidence" added to the record since the prior ALJ decision indicates that

in July 2015 Plaintiff was diagnosed with breast cancer and underwent a "right

radical mastectomy"; she completed a 12-week course of chemotherapy; and, after

a three month delay, she agreed to undergo radiation therapy in September 2016.

Tr. 20, 1827, 1839, 1844. As noted by the ALJ, while this treatment "clearly

affected her functional ability, at the end of her course of radiation, [Plaintiff's]

oncologist found [Plaintiff] at a 0/10 pain level and limited her to 'no physically

strenuous activity, but ambulatory and able to carry out light or sedentary work

(e.g. office work, light house work).'" Tr. 20-21 (citing Tr. 1828). As to her

additional claimed impairments of alcohol abuse and carpal tunnel syndrome, the

ALJ cited the medical expert testimony, and evidence from the prior ALJ decision,

that Plaintiff's liver function tests were within normal range, and her right carpal

tunnel syndrome "responded moderately well to a brace." Tr. 21, 473, 619, 704-

05. Similarly, the ALJ noted that Plaintiff's claimed impairments of peripheral

neuropathy, bilateral thumb arthritis and migraine headaches "were adequately

discussed in the prior decision and without evidence of changed circumstances

additional discussion is moot." Tr. 21. In the prior decision, the ALJ found

Plaintiff's "allegations regarding the severity of her impairments are not consistent

with the objective medical evidence," including: normal CT scan of Plaintiff's

abdomen; liver biopsy showing minimal inflammation and no well-developed

cirrhosis after she discontinued her alcohol abuse; electrodiagnostic testing

showing only mild carpal tunnel in her right upper extremity; x-rays showing CMC

arthritis more pronounced on right than left; and "[p]hysical examinations

consistently showed that she had good strength, range of motion, sensation and

deep tendon reflexes despite her complaints of numbness and pain." Tr. 119-21

(citing Tr. 471, 473, 582, 589, 639, 642, 655, 658, 704, 710, 716, 723).

Plaintiff argues that due to "the lack of testimony from the [second] hearing

from the Plaintiff regarding her symptoms we are left with the symptom testimony

via her reports to her treating providers. The first hearing in this case came prior to

Plaintiff's diagnosis of breast cancer and as a result lacked a basis for a discussion

on fatigue." ECF No. 11 at 13. Plaintiff correctly notes that she did not appear,

and therefore did not testify, at either hearing. *See* Tr. 34, 51. However, as noted

by Defendant, Plaintiff was given the opportunity to testify at both hearings; she did not appear at either hearing; she was represented by council at both hearings; and the record was left open for Plaintiff to submit additional evidence or statements. ECF No. 12 at 5-6 (citing Tr. 34-35, 51-53). Moreover, Plaintiff did submit an additional statement after she failed to appear at the first hearing, which was properly considered in both ALJ decisions. Tr. 20, 119. Finally, Plaintiff does not offer, nor does the Court discern, legal authority to support Plaintiff's general contention that Plaintiff's "testimony [cannot be] inconsistent with the medical record when the testimony never occurred." ECF No. 13 at 2. Rather, as indicated in Social Security Ruling ("SSR") 16-3p, "adjudicators must base their findings solely on the evidence in the case record, *including* any testimony from the individual or other witnesses at a hearing before an [ALJ]." SSR 16-3p, available at 2017 WL 5180304 at *10 (October 25, 2017) (emphasis added). Here, the ALJ properly outlined Plaintiff's "statements" in the case record regarding her symptoms, which included: neuropathy in her feet causing pain, numbness, and tingling in her lower extremities; inability to walk short distances; very little strength and mobility especially in her lower extremities, and difficulty with motor movement and gripping due to her alleged carpal tunnel syndrome. Tr. 20 (citing Tr. 343, 365-66).

Plaintiff also generally argues that "the ALJ at no point indicates how or why [the medical records cited by the ALJ] are inconsistent with specific symptom

statements by [Plaintiff] and are, therefore, not specific, clear, or convincing" reasons to discount Plaintiff's symptom testimony. ECF No. 13 at 2-3; *Lester*, 81 F.3d at 834 ("General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). However, in the prior decision, the ALJ specifically noted that Plaintiff's symptoms "quickly improved" when she discontinued alcohol use; and, as discussed in detail above, "despite her complaints of numbness and pain," physical examinations showed good strength, normal range of motion, normal sensation and deep tendon reflexes, and normal gait. Tr. 121. Moreover, as noted by the ALJ, Plaintiff had "allege[d] difficulty using her hands, but objective testing showed only mild carpal tunnel syndrome on the right." Tr. 21, 121. In the most recent decision, the ALJ specifically found that these "impairments were adequately discussed in the prior decision and without evidence of changed circumstances additional discussion is moot." Tr. 21. Plaintiff fails to identify or challenge this finding. *See Carmickle*, 533 F.3d at 1161 n.2 (Court may decline to address this issue because it was not raised with specificity in Plaintiff's briefing). The Court finds the ALJ properly identified the discounted symptom claims, and the evidence undermining those claims. *See Lester*, 81 F.3d at 834.

Finally, as noted by Defendant, Plaintiff "argues in a brief and conclusory fashion that the ALJ erred by not articulating reasons to discredit the symptom testimony provided within the medical records regarding her symptoms from her

breast cancer treatment." ECF No. 12 at 8. However, Plaintiff fails to offer evidence of symptom claims, specifically as a result of her breast cancer treatment, that were not properly considered by the ALJ. *See Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"). Moreover, Plaintiff fails to consider the medical evidence cited by the ALJ, and noted to be consistent with Dr. Cirksena's expert testimony, indicating that after Plaintiff underwent surgery, chemotherapy, and radiation treatment, she was at a 0/10 pain level and was deemed able to carry out light or sedentary work by her treating oncologist. Tr. 20-21 (citing Tr. 1828).

Thus, based on the foregoing, and regardless of evidence that could be interpreted more favorably to the Plaintiff, it was reasonable for the ALJ to discount Plaintiff symptom claims as inconsistent with objective medical evidence during the relevant adjudicatory period. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2. *Failure to Comply with Treatment*

Second, the ALJ noted that Plaintiff initially "declined" radiation therapy, and "[d]uring the course, she 'continued to miss treatments prolonging her overall course,' indicating that [Plaintiff] was not compliant with her treatment protocols."

Tr. 20, 1826-27, 1830-33, 1836. Dr. Cirksena testified that it was "unclear" if

Plaintiff actually completed her recommended course of radiation therapy. Tr. 20,

58. In addition, Dr. Cirksena noted that Plaintiff may have difficulty walking due

to ankle arthrodesis, "although some of that is self-inflicted, in terms of her failure

to keep the cast on as she was prescribed, and her failure to stay off weight bearing

for the period of time to allow the ankle fusion to heal.". Tr. 60, 1907 (noting

"noncompliance with medical treatment" after Plaintiff walked on her right foot

after surgery, despite counseling "about the necessity to remain nonweightbearing

to the right lower extremity during the healing process."), 1917-19 (noting

"noncompliance with medical treatment" after Plaintiff removed her cast at home

and walked on her foot without the cast). The Court also notes that in January

2016, Plaintiff attempted to "sign" out of the hospital against medical advice. Tr.

1197.

The Court may decline to address this issue because Plaintiff did not

challenge the reason with specificity in his opening brief. *See Carmickle*, 533 F.3d

at 1161 n.2. Regardless, unexplained, or inadequately explained, failure by

Plaintiff to seek treatment or follow a prescribed course of treatment may be the

basis for an adverse credibility finding unless there is a showing of a good reason

for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). It was reasonable

for the ALJ to rely on Plaintiff's failure to comply with treatment as a reason to

discredit her symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**C. Step Five**

Finally, Plaintiff argues the ALJ improperly rejected the medical opinions and Plaintiff's subjective testimony, and therefore erred at step five by posing an incomplete hypothetical to the vocational expert. ECF No. 11 at 14-15. Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray,* 554 F.3d at 1228 (citation and quotation marks omitted). However, as discussed in detail above, the ALJ's rejection of the medical opinions, and Plaintiff's symptom claims, was supported by the record and free of legal error. The hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. The ALJ did not err at step five

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly weighed the medical opinion evidence; provided clear and convincing reasons to discount Plaintiff's symptom testimony; and did not err at step five. After review the court

finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** May 17, 2019.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge